Plazak, Appellant, *v.* Allegheny Steel Company.

Plazak *v.* Allegheny Steel Company, Appellant.

Argued October 2, 1936.   Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

L. *Pat McGrath,* with him *A. R. McGrath,* for appellant (No. 209) and for appellee (No. 230).

*William A. Challener,* with him *William A. Challener, Jr.,* for appellee (No. 209) and for appellant (No. 230).

OPINION BY MR. JUSTICE LINN, November 23, 1936:

Plaintiff, alleging that he suffered with an occupational disease resulting from defendant's violation of the Act of May 2, 1905, P. L. 352, sections 11, 13, 43 PS sections 5, 6, regulating employment in industrial establishments, obtained a verdict. On defendant's motion, the court granted a new trial; from that order the plaintiff appeals. The defendant appeals from the refusal of its motion for judgment n. o. v.

Plaintiff declared on violation of sections 11 and 13. Section 11 required that "Exhaust fans of sufficient power, or other sufficient devices, shall be provided for the purpose of carrying off poisonous fumes and gases, and dust from emery-wheels, grind-stones and other machinery creating dust. . . ." Section 13 required the employer to provide "not less than two hundred and fifty cubic feet of air-space for each and every person in every work-room . . . and shall provide that all work-rooms . . . be kept in a clean and sanitary condition. . . ." The verdict establishes that defendant did not supply a reasonably safe place to work measured by the statutory requirement. The effect of such violation was considered in *Stehle v. Jaeger Automatic Machine Co.,* 220 Pa. 617, 69 A. 1116; *Fritz v. Elk Tanning Co.,* 258 Pa. 180, 187, 101 A. 958. By continuing in the employment, plaintiff did not assume the risk: *Fegley v. Ly-*

*coming Rubber Co.*, 231 Pa. 446, 80 A. 870; *Solt v. Williamsport Radiator Co.*, 231 Pa. 585, 80 A. 1119; the Workmen's Compensation Act does not provide a remedy: *Mauchline v. State Insurance Fund*, 279 Pa. 524, 124 A. 168. The defense is that the action is barred by the statute of limitations.

Plaintiff operated a grinding machine (as he alleges) "breathing fine particles of dust arising from the grinding of steel with abrasive wheels."[1] The employment at this work began in 1926 and, with the exception of an intermission of 6 weeks in 1928, ended, according to plaintiff's evidence, April 5, 1930, when he became ill and was required to stop without being able to complete the day's work. The disease disabled him from work thereafter. It was diagnosed as silicosis[2] sometime after April 11, 1930. Defendant's contention is that plaintiff quit work March 18, 1930, and not on April 5th. The suit was brought March 28, 1932. It will be observed that if plaintiff's date, April 5th, be accepted as the termination of the employment, his suit was brought within 2 years, but if defendant's date be accepted, the action was not brought within two years of the termination of the employment.

The statute of limitations provides "Every suit hereafter brought to recover damages for injury wrongfully done to the person . . . must be brought within two

---

[1] Plaintiff testified—"A. Well, during the grinding, the dust would fly into my nose, ears, mouth, over my shoulders, and would settle there a quarter of an inch thick. Q. Where would this dust come from? A. From the steel and from the grinding wheel. Q. When you refer to the grinding wheel, do you mean the abrasive wheel? A. Yes. Q. How thick would the dust be around the place where you were working? A. In the place where I stood, the dust would fall for about a half foot high. Q. Would the dust stay on the ground or go into the air or what? A. Well, the dust would be driven up in the air and then come down again, and be taken up again and come down again."

[2] For a description of this disease, see *Sullivan's Case*, 265 Mass. 497, 164 N. E. 457.

years from the time when the injury was done and not afterwards. . . .": Act of 1895, P. L. 236, 12 PS section 34.

The learned trial judge submitted a special interrogatory asking the jury to ascertain the date on which the employment terminated and the jury reported April 5th, 1930, as the last working day. In the opinion granting the new trial, the learned trial judge stated that he was not satisfied with the conclusion of the jury on that point; he said the finding "that plaintiff last worked within the two-year period is against the weight of the evidence on that issue. Since the verdict is necessarily premised upon that finding, the verdict cannot stand and the entire case must be retried." There may have been other reasons.[3]

When the determination of a fact is controlling and a court has granted a new trial because in its opinion the jury reached a result that cannot be sustained by the evidence, this court will not substitute its judgment for that of the trial judge who saw and heard the witnesses and was therefore in better position to pass on the question. The learned trial judge did not certify that, but for the single point referred to, the new trial would not have been granted: *Andrzejewski v. Prudential Insurance Co.*, 321 Pa. 543, 184 A. 51, and cases there cited. There was no abuse of discretion, unless the record required that defendant's motion for judgment n. o. v. should have been granted.

---

[3] In defendant's brief it is said: "Defendant's motion for a new trial did not stop at claiming that the special finding was against the weight of the evidence, it went much further; some twenty-three reasons were assigned. Some of them related to the admission of testimony, others dealt with questions of law and the third reason especially dealt with the inflammatory and prejudicial address of plaintiff's counsel to the jury and the refusal of the court to withdraw a juror and continue the case on timely exception and motion for that purpose. The court did not in its opinion discuss the questions raised by these reasons."

Defendant's appeal is based on the refusal of its point for binding instructions: *Fornelli v. R. R. Co.*, 309 Pa. 365, 164 A. 54, and cases following it. The request was based on the proposition that plaintiff's claim was barred by limitation. If it was, defendant is entitled to judgment; if the facts on which the application of the statute depends were in dispute, the order granting the new trial should be affirmed, no abuse of discretion appearing, as we have already said.

The verdict establishes that plaintiff is afflicted with silicosis, a disease caused by inhaling deleterious dust incident to his occupation and resulting from defendant's violation of the statute; it also establishes that plaintiff was suffering from this disease on or prior to April 5th, when he ceased working, assuming his evidence to be true. As "for injury wrongfully done to the person" the action "must be brought within two years from the time when the injury was done" our inquiry must be, when was the "injury wrongfully done"? There was breach of defendant's statutory duty to furnish a reasonably safe place to work during each and every day, from the time in 1928 when he resumed working on the grinding machine, to the time when he ceased. That period was continuous; the breach of statutory duty was continuous; it operated from the first working day to the last and, in dealing with the effect said to have resulted, must be treated as one tort, as one invasion of plaintiff's legally protected interest in bodily security. Similar breach of the employer's duty has been so regarded: *Fritz v. Elk Tanning Co.*, 258 Pa. 180, 101 A. 958; *Duffy v. India Refining Co.*, 58 Pa. Superior Ct. 473; *McCray v. Sterling Varnish Co.*, 7 Pa. Superior Ct. 610, cases dealing with injuries to workmen resulting from exposure to deleterious working conditions.[4] If there were any question about the continuity of the pe-

---

[4] See Bohlen: The Common Law Right of Action for Occupational Disease in Pennsylvania, 63 U. of P. L. Rev. 183.

riod and of the wrong, the evidence would be for the jury but on this record there is no question about it. If on the retrial of the case, the evidence establishes that plaintiff's employment stopped prior to March 28th, as defendant contends, his action was not brought within two years from the time when he was subjected to defendant's breach of duty and he will not be entitled to recover for the obvious reason that he did not bring suit within the time specified by the legislature. If, however, the evidence shows that the wrong continued until April 5th, as he contends, his suit is in time. To recover, it will of course be necessary for him to show that the disease was contracted on or prior to April 5, 1930, even if not then fully matured. In referring to the evidence, in passing, we may add that it is immaterial, in dealing with the point under consideration, that the first symptoms of the disease which manifested themselves in March, 1930, were misunderstood to indicate pleurisy, if they were so misunderstood; the ultimate fact to be determined is whether between March 28th and April 5, 1930, plaintiff was suffering with any disease caused by defendant's requiring or permitting him to work in the conditions described above; if it now appears that as a result he was then suffering with incipient silicosis, even though it began prior to March 28th and matured afterward, he is entitled to recover all the resulting damages of which he can offer proof down to the time of trial as in other cases.

The parties differ in their interpretation of the statute of limitations. The plaintiff refers to decisions made in other jurisdictions construing Workmen's Compensation Acts for the proposition, as we understand it, that for occupational disease,[5] the time does not begin to run un-

---

[5] It is to be noted that the disease from which plaintiff suffered is not merely an occupational disease but one caused, as the verdict establishes, by conditions of employment resulting from defendant's violation of the statute designed to protect employees against the danger of such disease.

til the plaintiff knows or should know that he has the disease either during the period of employment or at any time after the employment ended.[6]  That construction, where it prevails, is doubtless required by the terms of the compensation acts involved, but it cannot change or affect the settled construction for many years given to our act of limitations.  There is a recognized distinction between common law litigation and the administration of Workmen's Compensation laws, which is not considered litigation in any technical sense:  *Gairt v. Curry Coal Mining Co.*, 272 Pa. 494, 498, 116 A. 382.  It is well settled, as was said in *Moore v. Juvenal*, 92 Pa. 484, 490, that "Where the declaration, as in this case, alleges a breach of duty and a special consequential damage, the breach of duty and not the consequential damage is the cause of action, and the statute runs from the date of the former, and not from the time the special damage is revealed or becomes definite:  *Wilcox et al. v. Plummer's Exrs.*, 4 Pet. 172."  That construction has been applied in a great variety of cases, among them:  where a recorder of deeds issued a false certificate of search:  *Owen v. Western Saving Fund*, 97 Pa. 47, 54;  where a Transfer Agent of the Commonwealth wrongfully transferred loans of the Commonwealth:  *Guarantee Trust, etc., Co. v. Bank*, 202 Pa. 94, 51 A. 765;  where a board of directors wrongfully authorized the payment of money:  *Link v. McLeod*, 194 Pa. 566, 45 A. 340;  where one engaged to search title fails to find an encumbrance on the property:  *Taylor v. Hammell*, 201 Pa. 546, 51 A. 316.  As some of those cases show, the application of the rule is not confined to violation of professional duty, but applies to breach of duty imposed by statute.  The time when the injury has been wrongfully inflicted, when the cause of action accrues, and from which the limitation period begins, in actions of the class to which this belongs, is when the breach of duty to provide a reasonably

---

[6] See Note 86 A. L. R. 572.

safe working place occurs. If the relation is continuous, as in that of master and servant, and the default is likewise continuous until the cumulative effect produces disability in the form óf occupational disease, total or partial, the master's failure to perform his duty, as we said above, is regarded as a single wrong continuing so long as the employment continues. Such wrong must therefore be redressed by action brought within two years and not thereafter from the time when the employment terminates. It is conceivable that this may in some cases be a hardship but it is one which the court cannot correct. The subject might very properly engage the attention of the legislature, as it has in many other states that have included occupational diseases as compensable under Workmen's Compensation Acts.[7]

For the same reason we must reject defendant's[8] contention that, assuming plaintiff's employment terminated April 5, 1930, the effect of defendant's breach of duty prior to March 28th must be eliminated from the jury's consideration.

The conclusion we have reached as to the operation of the statute of limitations is in accord with that generally prevailing in tort actions to recover for occupational disease: see *Schmidt v. Merchants Despatch,* 270 N. Y. 287, 200 N. E. 824; *Wiersycki v. Pratt et al.,* 151 N. Y. Misc. 207, 271 N. Y. S. 36; *Scott v. Rinehart & Co.* (W. Va.), 180 S. E. 276; *Field v. Gazette Publishing Co.,* 187 Ark. 253, 59 S. W. (2d) 19; *Brown v. Tennessee, etc., Coal*

---

[7] See *Workmen's Compensation for Dust Diseases,* 36 Columbia Law Rev. (November, 1936), page 1142.

[8] Defendant's brief says: "This suit was brought March 28, 1932. It is clear, therefore, that every alleged negligent act or omission which occurred prior to March 28, 1930, was barred by the operation of the Statute of Limitations. This leaves as the only period during which unbarred negligence could operate, the nine days which intervened between March 28, 1930 (when the bar of the statute closed), and the 5th day of April, 1930 (when Plazak quit work)."

*Co.* (Tenn.), 83 S. W. (2d) 568; *La Porte v. U. S. Radium Co.* (D. N. J.), 13 F. Supp. 263.

Another matter may be referred to. In his brief in reply to defendant's appeal, plaintiff makes a point which cannot be dealt with adequately on the information before us. It is thus stated: "Plaintiff attempted to show [the evidence was stricken out] that sometime prior to April 5, 1930, he complained to his foreman, Bennie Gates, about being ill. The foreman directed him to return to work, that the dust was 'doing him no harm.' These misleading and concededly erroneous instructions caused plaintiff to continue in his employment until such time as he was unable to labor further. We contend that the expression and action of the foreman constituted fraud and concealment which, in any view of the case, would toll the statute of limitations until such time as the plaintiff learned that the advice of this foreman was erroneous."

The general rule is that the bar of the statute may be tolled by the fraud or concealment of a party. We have not been furnished with and therefore cannot consider the effect of the evidence stricken out. Generally such assurance by an employer rebuts the charge of the contributory negligence, as the cases cited by plaintiff show *(Fritz v. Elk Tanning Co.,* 258 Pa. 180, 187, 101 A. 958). All that we can now say is that the ruling appears not to have affected the result: the statement was made, as we understand it, before the employment terminated, before the wrongful injury was completed, on March 18th or April 5th. If on the re-trial the matter is developed the learned court below will doubtless consider it in the light of the rules governing fraud or concealment in such cases: see *Schwab v. Cornell,* 306 Pa. 536, 160 A. 449.

Judgment affirmed.