# Carley *v.* Dexcar Coal Mining Company, Appellant.

*Practice, C. P.—Statement of claim—Pleading statutes—Master and servant—Assumption of risk—Bituminous Mine Act of June 9, 1911, P. L. 756.*

1. Where a statement of claim sets forth facts bringing the case within the purview of an act of assembly, but does not specify the act, and defendant takes no steps to have the statement made more specific, he cannot object to the trial of the case in accordance with the provisions of the act.

2. Where a motion for binding instructions is made upon the ground that no act of assembly permits a recovery, it is sufficient on appeal to show that there is an act of assembly which permits it.

3. Where there is ample evidence to sustain plaintiff's contention it would be error to refuse to submit the case to the jury, although there is other evidence as to the cause of the injury from which an opposite conclusion might be reached.

4. Assumption of risk is not a defense under the Bituminous Mine Act of June 9, 1911, P. L. 756.

Argued Oct. 1, 1918. Appeal, No. 50, Oct. T., 1918, by defendant, from judgment of C. P. Cambria Co., March T., 1916, No. 128, on verdict for plaintiff. in case of Emma Carley v. Dexcar Coal Mining Company. Before BROWN, C. J., STEWART, FRAZER, WALLING, SIMPSON and FOX, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's husband. Before STEPHENS, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $5,014. Defendant appealed.

*Error assigned* was in refusing defendant's motion for judgment n. o. v.

*Philip N. Shettig,* with him *John H. McCann, Michael J. McCann* and *M. D. Kittell,* for appellant.—The evidence did not disclose negligence on the part of the defendant: Ford v. Anderson, 139 Pa. 261.

Plaintiff's husband assumed the risk of working in proximity to the fan and shaft: O'Keefe v. Thorn, 24 W. N. C. 379; Kaufhold v. Arnold, 163 Pa. 269; Card v. Stowers Packing & Provision Co., 253 Pa. 575.

Evidence to show a violation of the Act of June 9, 1911, P. L. 756, after the statute of limitations had run, was inadmissible, in view of the fact that the statement of claim had not been so amended prior to the running of the statute as to allege a. violation of the said Act of 1911: Allen v. Tuscarora Valley R. R. Co., 299 Pa. 97; Dunbar Furnace Co. v. Fairchild, 121 Pa. 563; Card v. Stowers Packing & Provision Co., 253 Pa. 575; Hogarty v. Philadelphia & Reading Ry. Co., 255 Pa. 236.

*J. J. Kinter,* with him *Leach & Leach* and *Harvey Roland,* for appellees.—The case was properly submitted to the jury: Tomczac v. The Susquehanna Coal Co., 250 Pa. 325; Maurer v. Rogers, 250 Pa. 447; Bollinger v. Crystal Sand Co., 232 Pa. 636; Wagner v. Standard Sanitary Mfg. Co., 244 Pa. 310.

The doctrine of assumption of risk is not applicable in this case: Foster v. National Steel Co., 216 Pa. 279; McGeehan v. Hughes, 217 Pa. 121; Patterson v. Pittsburgh, Etc., R. R. Co., 76 Pa. 389.

It was not the duty of the plaintiff to especially plead the Bituminous Coal Act of June 9, 1911, P. L. 756; Irwin v. Leuten Brick Co., 59 Pa. Superior Ct. 150; Miller v. Bealer, 100 Pa. 583; Rauch v. Smedley, 208 Pa. 175.

OPINION BY MR. JUSTICE SIMPSON, October 23, 1918:

The statement of claim in this case averred that William Carley was an engineer employed by defendant in its bituminous coal mine; that while so employed his clothing was caught by a shaft projecting outside of the engine house, and he was whirled around the shaft and received injuries from which he died; that there was no covering, protection or guard over said shaft; that in addition to the duty to supply him with a safe place in which to work, it was defendant's duty under the act of assembly to provide belts, shifters and other machinery and appliances and to guard dangerous machinery; that if the shaft had been properly guarded the accident would not have happened; that plaintiff is his widow, and that she, and their four named children, are entitled to recover damages from defendant for its negligence as aforesaid.

The act of assembly referred to is not named by date or otherwise, and no motion was made by defendant to have it definitely specified.

At the trial plaintiff's evidence tended to show that William Carley always had been a well man; that he

was an engineer in defendant's bituminous coal mine; that he left his home on the day of the accident to continue his work for defendant; that no one saw the accident happen, but when he was found he was in the mine lying under an unguarded shaft which projected about two and a half feet outside of the engine house; that he was fully acquainted with the place of the accident; that as a result thereof his clothing was badly damaged, his shoes and socks torn off his feet, and blood and finger marks appeared under the shaft and on the ground around it; that from their location it was evident he had been caught by and whirled around the shaft, striking the ground in the various places where the blood and marks appeared. One of the witnesses said they appeared "where it [the shaft] twirled him down on the ground." The shaft had been revolving that morning, but at the time deceased was discovered the belt had been thrown off the flywheel, and the shaft was not revolving, though the engine itself was still running. The space between the end of the shaft and the opposite bank was about three feet, but it was partially obstructed at that time by fallen earth and other debris. Deceased had to pass through this space in order to get to his place of work. After he was injured he was taken to his home, and thence to a hospital, where he died as a result of his injuries.

In addition to the foregoing, there was evidence relating to his earning power, his expectancy of life, his family relations, the extent of his injuries, and the cost of his burial. Plaintiff also offered to prove that it was dangerous to leave the shaft unguarded, and that it was feasible to have had it guarded, but, on defendant's objection that this evidence was incompetent, it was excluded.

Defendant thereupon moved for a nonsuit upon the ground, inter alia, that it had not been shown it was negligent, either in not providing a safe place to work "or under the provisions of any statute of the

Commonwealth of Pennsylvania." The motion was denied, whereupon it offered no evidence, but submitted a point for binding instructions, "for the same reasons as set forth in the motion for a compulsory nonsuit." The point was refused, and the case submitted to the jury in a charge to which no exception was taken. The jury found for plaintiff; a motion for judgment non obstante veredicto was thereafter made and overruled, judgment entered on the verdict, and this appeal taken.

The only assignment of error is to the refusal to enter judgment non obstante veredicto, and the bases of the appeal as stated are three:

1st. Can plaintiff recover in view of the fact that the circumstances of the case "leave the cause of the injuries open to one or more explanations consistent with the exercise of proper care on the part of the defendant." If there are such other explanations they have not been made to appear either in the argument or the evidence. If there are such the jury was the tribunal to decide the matter, for the alleged cause is fairly deducible from the facts presented. Indeed it is difficult, if not impossible, to understand how, under the evidence, the jury could have reached any other conclusion than that deceased met his death in the way plaintiff claimed he had.

2d. In view of plaintiff's knowledge of the place of the accident, and his connection with the work done there, "does the presumption of freedom from contributory negligence obtain?" It may be said that in case of death that presumption always obtains: Schæfer v. Consolidated Ice Co., 238 Pa. 367, 370. If, however, appellant means, does the fact of that knowledge conclusively establish contributory negligence, then we answer that as that was the only way by which he could get to his work, he was not contributorily negligent in taking that way: Fortney v. Breon, 245 Pa. 47; and under the Bituminous Mine Act of June 9, 1911, P. L. 756, the defense of assumption of risk is not open to

defendant: Valjago v. Carnegie Steel Co., 226 Pa. 514; Fegley v. Lycoming Rubber Co., 231 Pa. 446.

3d. When plaintiff declares under an inapplicable statute, can she recover under the applicable one after the statute of limitations has run, and without even amending her declaration. It is a complete answer to this objection that it was not made a basis for the request for binding instructions. The allegation there was that no act of assembly justified a recovery. Moreover, the statement did not specifically refer to any act of assembly, and defendant did not ask that it be made more specific. Probably this was due to the fact that the liability of defendant was exactly the same under Sec. 11 of the Factory Act of May 2, 1905, P. L. 352, in reliance upon which it claims the statement was drawn, and under Art. VIII, Sec. 4, of the Bituminous Mine Act of June 9, 1911, P. L. 756, to which the language used was equally applicable, and under which the recovery was had. The former act provides that "All ......shafting......and machinery of every description shall be properly guarded." The latter act provides that "All machinery in and about the mines, from which any accident would be likely to occur, shall be properly fenced off by suitable guard railing." Under the former we held in Jones v. American Caramel Co., 225 Pa. 644, that neither the obviousness of the danger, nor a usage of the business, was a defense if the machinery was in fact left unguarded. In Valjago v. Carnegie Steel Co. and Fegley v. Lycoming Rubber Co., supra, we held that assumption of risk was no defense under such circumstances. Those decisions apply as well under the Act of 1911 as under the Act of 1905.

The judgment is affirmed.